IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| USC IP PARTNERSHIP, L.P.,<br><br>      Plaintiff,<br><br>      v.<br><br>FACEBOOK, INC.,<br><br>      Defendant. | CIVIL ACTION NO. 6:20-cv-555<br><br>ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT<br><br><u>JURY TRIAL DEMANDED</u> |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff USC IP Partnership, L.P. ("USC IP" or "Plaintiff") files this original complaint against Facebook, Inc. ("FB" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**PARTIES**

1. USC IP is a limited partnership formed under the laws of the State of Texas, with its principal place of business at 250 Decker Drive, Suite 100, Irving, Texas 75062.

2. USC IP is an affiliate of Usability Sciences Corporation ("USC"), the revolutionary usability and user experience research firm founded three decades ago by IBM alumnus Jeff Schueler and still based in Irving, Texas.  A Texas corporation founded in 1988, USC regularly provides professional services, consulting, and user experience expertise to industry-leading companies across diverse industries, including Fortune 500 corporations and other leading companies in the computer, internet, security, banking, finance, insurance, healthcare, life

sciences, pharmaceutical, apparel, logistics, professional services, travel, retail, media, and automotive industries.

3.  Defendant Facebook, Inc., is a publicly traded company organized and existing under the laws of Delaware with a place of business in this district and may be served at its registered agent for service of process, Corporation Service Company dba CSC – Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

4.  This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

5.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c). Defendant has a place of business in this district, including at 300 West 6th Street, Austin, Texas 78701 and/or 607 West 3rd Street, Austin, Texas 78701, and has committed acts of infringement in this district.

6.  Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Defendant's substantial business in this forum, including (i) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

7.  Specifically, Defendant intends to do and does business in Texas, directly or through intermediaries and offers its products and/or services, including those accused herein of

infringement, to customers and potential customers located in the forum state, including in this district.

## THE TECHNOLOGY

8. The patent-in-suit, U.S. Patent No. 8,645,300 (the "'300 Patent" or the "Asserted Patent"), teaches systems and methods for processing information from visitors to one or more websites. Specifically, determining a visitor's intent and using a visitor's intent to predict and suggest webpages for the visitor.

9. The genesis of the '300 Patent is rooted in USC's revolutionary work in the fields of usability and user experience. As early as 1992, USC recognized that although Windows software companies provided online help and physical written documentation manuals, those resources were unappealing to their intended audiences. As a result, those resources were underutilized and users found it difficult to learn new software, resulting in a poor user experience with the software.

10. USC addressed the issue by first creating a series of short, task-specific instruction video segments that were an instant hit with users. After further research and development, USC recognized that it could use functionality built into the Windows operating system to control the mouse cursor on the screen, showing the user how to perform certain functions on their computer, without having to reference a separate video. USC registered the QuickTutors® trademark in 1992 and began selling these Windows add-on tutorials.

11. Through continued research and development, USC realized that it could further improve the usability and user experience of computer users with a concise list of step-by-step instructions for performing a software task. From this realization, USC developed QuickCards®,

an unobtrusive yellow list of step-by-step instructions for accomplishing a computing task that would remain on top of the windows on a user's computer:



12.     QuickCards® were superior to traditional user manuals and tutorials available at the time, which increased the usability and user experience for the associated software. Microsoft Press recognized the merit of QuickCards®, licensed them from USC, and released QuickCards® through its distribution channels. Subsequently, a similar feature was included in the new help system introduced in Microsoft Windows 95:



13. In the late 1990s, electronic-commerce websites were becoming more and more prevalent with various industries selling direct to consumer on the world wide web. USC was again at the forefront, improving the usability and user experience of websites for customers such as Procter & Gamble, Disney, Dell, Cisco, and Microsoft. At the time, website owners had little to no information regarding how customers used their websites, including which areas customers accessed and whether the customer's visit was positive and successful. USC developed and deployed several tools that provided such information, thereby allowing website owners to improve the usability and user experience of their websites.

14. By developing those tools and understanding the information they provided, USC recognized early on that, although websites are valuable resources to companies seeking to engage both current and potential customers, the value of a website will not be fully realized if its visitors are unable to locate the information they seek. USC applied its knowledge in the field to address this shortcoming by developing systems and methods for inferring the intent of a website visitor. That intent is subsequently used to predict and suggest webpages for the visitor, increasing the usability and user experience of the website, as claimed in the '300 Patent.

## COUNT I

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,645,300

15. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-14 as if fully set forth in their entirety.

16. On February 4, 2014, U.S. Patent No. 8,645,300 ("the '300 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System and Methods for Intent Data Processing." A copy of the '300 Patent is attached as Exhibit A.

17. Plaintiff is the owner of the '300 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '300 Patent against infringers, and to collect damages for all relevant times.

18. The '300 Patent describes novel and non-obvious systems and methods for predicting the intent of a visitor to a webpage.

19. The claims of the '300 Patent are not directed to an abstract idea.

20. For example, claim 1 is a technical improvement over prior-art methods of identifying webpages for display to a user.

21. Claim 1 recites an "intent engine" that receives at least one input parameter from a web browser displaying a webpage.

22. The intent engine is an improvement to computing technology that allows the system to predict the intent of a visitor to a website.

23. Prior-art systems and methods did not include an intent engine and were incapable of predicting the intent of a visitor to a website, therefore they were not capable of identifying relevant webpages for display to a user.

24. The method in claim 1 uses the intent engine to predict the intent of a visitor by receiving at least one input parameter from a web browser displaying a webpage.

25. The intent engine processes the at least one input parameter to determine at least one inferred intent. The inferred intent is displayed on a webpage so that the visitor can confirm his or her intent. The intent engine receives that confirmed intent and processes it to determine at least one recommended webpage from a plurality of webpages in a defined namespace, a link to the recommended website being subsequently displayed to the visitor. The visitor is then prompted

to recommend the webpage for inferred intent, and a datapoint comprising the identity of the webpage, inferred intent, and received rank are subsequently stored.

26. Thus, claim 1 recites a particular solution to predicting the intent of a visitor to a webpage, rather than merely claiming the outcome.

27. Regardless of whether claim 1 is directed to an abstract idea, claim 1 recites patentable subject matter because it recites an inventive concept.

28. For example, the intent engine is not well-understood, routine, or conventional; rather it is an improvement to computing technology that allows for dramatically improved identification of websites for display to a user based on predicting the intent of the user through an intent engine, a capability that did not exist in the prior art.

29. Moreover, the use of the components recited in claim 1 is unconventional; therefore, claim 1 recites an inventive concept.

30. The written description of the '300 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

31. Defendant made, had made, used, imported, provided, supplied, distributed, sold, or offered to sell products and/or systems, including its computing infrastructure to provide the Facebook News Feed ("Accused Instrumentalities"):





32. On information and belief, Defendant provides Facebook News Feed to users through its websites, including facebook.com.

33. On information and belief, Defendant also provides Facebook News Feed for delivery to mobile applications for Apple iOS devices and Android devices.

34. By doing so, Defendant has infringed the '300 patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering to sell the Accused Instrumentalities.

35. Defendant has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '300 Patent. Defendant's infringement in this regard is ongoing.

36. By making and using the Accused Instrumentalities, Defendant receives input parameters from a web browser displaying a webpage. The input parameters include, but are not limited to, the requested Uniform Resource Locator (URL), cookies, the browser user agent, and other parameters about the visitor, such as user information maintained by Defendant.

37.     By making and using the Accused Instrumentalities, Defendant processes "signals," including input parameters, related to the visitor to the Accused Instrumentalities to infer intent.



38.     By making and using the Accused Instrumentalities, Defendant inferred the intent of visitors from so-called "reactions" from each visitor and other visitors.

> Our goal with News Feed is to show you the stories that matter most to you. Initially, just as we do when someone likes a post, if someone uses a Reaction, we will infer they want to see more of that type of post. In the beginning, it won't matter if someone likes, "wows" or "sads" a post — we will initially use any Reaction similar to a Like to infer that you want to see more of that type of content. Over time we hope to learn how the different Reactions should be weighted differently by News Feed to do a better job of showing everyone the stories they most want to see.

39.     By making and using the Accused Instrumentalities, Defendant maintained an inventory of "stories," which include webpages.

40.     By making and using the Accused Instrumentalities, Defendant assigns a relevancy score for each story, based on at least the signals, which is a representation of how closely the story

matches the visitor's inferred intent. Stories are ranked by the relevancy score for display to the visitor.



41. By making and using the Accused Instrumentalities, Defendant prompted the visitor to confirm the visitor's intent by, for example, reacting to the stories displayed to the visitor, or providing feedback for the stories.





42. By making and using the Accused Instrumentalities, Defendant recommended and displayed a link to at least one webpage, such as an advertisement, that matches the visitor's confirmed intent.



43. By making and using the Accused Instrumentalities, Defendant prompted the visitor to rank the webpage for inferred intent by, for example, reacting to the webpage or providing feedback.

44. By making and using the Accused Instrumentalities, Defendant received the ranking from the visitor's web browser and subsequently stored it in a datapoint along with the identity of the webpage and the inferred intent.

45. On information and belief, Defendant generates revenue by displaying advertisements to visitors to the Accused Instrumentalities.

46. On information and belief, Defendant's making and using of the Accused Instrumentalities in an infringing manner generates more revenue for displaying advertisements than if Defendant had not made or used the Accused Instrumentalities in an infringing manner.

47. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

48. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '300 Patent.

**ADDITIONAL ALLEGATIONS REGARDING INDIRECT INFRINGEMENT**

49. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-48 as though fully set forth in their entirety.

50. Defendant has also indirectly infringed the Asserted Patent by inducing others to directly infringe the Asserted Patent. Defendant has induced others, including its affiliates, third-party manufacturers, shippers, distributors, retailers, or other persons acting on Defendant's or its affiliates' behalf, to directly infringe (literally and/or under the doctrine of equivalents) the Asserted Patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering to sell the Accused Instrumentalities in an infringing manner. Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to, for example, use the Accused Instrumentalities in a manner that infringes one or more claims of the Asserted Patent, including, for example, Claim 1 of the '300 Patent. Such steps by Defendant included, among other things, advising or directing others to use the Accused

Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; and/or distributing instructions that guide others to use, operate, make, or have made the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the Asserted Patent and with the knowledge that the induced acts constitute infringement.  Defendant's inducement is ongoing.

51. Defendant has also induced its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to directly infringe (literally and/or under the doctrine of equivalents) the Asserted Patent by importing, selling, or offering to sell the Accused Instrumentalities in an infringing manner.  Defendant took active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused services in a manner that infringes one or more claims of the patent-in-suit, including, for example, Claim 1 of the '300 Patent.  Such steps by Defendant included, among other things, making, having made, using, importing, providing, supplying, distributing, selling, or offering to sell the Accused Instrumentalities, or components thereof, in a manner that induces Defendant's affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to make or use the Accused Instrumentalities outside of the United States in an infringing manner.  Defendant performed these steps, which constitute induced infringement, with the knowledge of the Asserted Patent and with the knowledge that the induced acts would constitute infringement.  Defendant performed such steps in order to profit from the eventual sale of the accused services in the United States.  Defendant's inducement is ongoing.

52.     Defendant has also indirectly infringed by contributing to the infringement of the Asserted Patent. Defendant has contributed to the direct infringement of the Asserted Patent by its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the Asserted Patent, including, for example, Claim 1 of the '300 Patent. The special features include, for example, an intent engine that is used in a manner that infringes the Asserted Patent. The special features constitute a material part of the invention of one or more of the claims of the Asserted Patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

53.     Defendant has knowledge of the Asserted Patent at least as of the date when it was notified of the filing of this action.

54.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of USC IP's patent rights.

55.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

56.     Defendant's direct and indirect infringement of the Asserted Patent is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of Plaintiff's rights under the patent.

57.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to USC IP in an amount that adequately compensates it

for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

USC IP requests that the Court find in its favor and against Defendant, and that the Court grant USC IP the following relief:

    a.    Judgment that one or more claims of the Asserted Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant and/or all others acting in concert therewith;

    b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the Asserted Patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patent by such entities;

    c.    Judgment that Defendant accounts for and pays to USC IP all damages to and costs incurred by USC IP because of Defendant's infringing activities and other conduct complained of herein;

    d.    Judgment that Defendant's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

    e.    That USC IP be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

    f.    That this Court declare this an exceptional case and award USC IP its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

      g.      That USC IP be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: June 22, 2020              Respectfully submitted,

By: */s/ Fred I. Williams*
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
Todd E. Landis
Texas State Bar No. 24030226
Jonathan L. Hardt
Texas State Bar No. 24039906
Chad P. Ennis
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com
jhardt@wsltrial.com
cennis@wsltrial.com

Todd E. Landis (*pro hac vice* pending)
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

*Attorneys for Plaintiff USC IP Partnership, L.P.*