IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| USC IP PARTNERSHIP, L.P., <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | CIVIL ACTION NO. 6:20-cv-555 <br><br><br><br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFF USC IP PARTNERSHIP, L.P.'S OPPOSITION TO DEFENDANT'S
MOTION TO TRANSFER VENUE TO THE AUSTIN DIVISION**

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. RELEVANT FACTS ...................................................................................................... 1

III. LEGAL STANDARD ..................................................................................................... 3

IV. ARGUMENT .................................................................................................................. 5

   A. The Austin Division Is Not More Convenient Than Waco Based On Private Factors. ................................................................................................................... 6

   1. The Parties' Relative Ease of Access to Evidence Militates Against Transfer. ..... 6

   2. The Cost Effectiveness of Attending Court Proceedings in Each Division Favors Denying the Motion. ................................................................................................ 9

   3. The Cost of Trial Is Neutral. .................................................................................. 11

   4. The Local Interest in Deciding the Case Does Not Support Transfer. ................. 11

   5. The Remaining Factors Are Neutral. .................................................................... 12

V. CONCLUSION ............................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*BNSF Ry. Co. v. OOCL (USA), Inc.,*
  667 F.Supp.2d 703 (N.D. Tex. 2009) ................................................................................. 10

*Ctr. for Biological Diversity v. McCarthy*,
  No. 14-cv-05138-WHO, 2015 WL 1535594, 2015 U.S. Dist. LEXIS 44853 (N.D. Cal. Apr. 6, 2015) ................................................................................................................................. 12

*Datascape, LTD. v. Dell Techs., Inc.*,
  No. 6:19-CV-00129-ADA, Dkt. No. 44, 2019 WL 4254069, 2019 U.S. Dist. LEXIS 154170 (W.D. Tex. June 7, 2019).................................................................................................... 9

*Diem LLC v. BigCommerce, Inc.,*
  No. 6:17-cv-00186-JRG, 2017 WL 6729907, 2017 U.S. Dist. LEXIS 213264 (E.D. Tex. Dec. 28, 2017) ............................................................................................................................ 6

*Garrett v. Hanson*,
  429 F. Supp. 3d 311 (E.D. Tex. 2019)................................................................................. 4

*Gaspard v. United States*,
  No. 2:19-CV-01206, 2020 U.S. Dist. LEXIS 26426 (W.D. La. Feb. 14, 2020)......................... 4

*Hammers v. Mayea-Chang*,
  No. 2:19-CV-00181-JRG, 2019 WL 6728446, 2019 U.S. Dist. LEXIS 213039 (E.D. Tex. Dec. 10, 2019) ........................................................................................................................ 5, 7

*In re Apple Inc.*,
  743 F.3d 1377 (Fed. Cir. 2014)............................................................................................ 5

*In re Radmax, Ltd.,*
  720 F.3d 285 (5th Cir. 2013) ........................................................................................... 9, 11

*In re Volkswagen AG,*
  371 F.3d 201 (5th Cir. 2004) ............................................................................................. 11

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) .............................................................................................. 4

*Invitrogen Corp. v. Gen. Elec. Co.,*
  No. 6:08-cv-113, 2009 WL 331889, 2009 U.S. Dist. LEXIS 9113 (E.D. Tex. Feb. 9, 2009).... 7

*Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*,
  No. 14-CV-464, 2014 WL 12479284, 2014 U.S. Dist. LEXIS 191022 (W.D. Tex. Aug. 12, 2014) .................................................................................................................... 10

*Sanger Ins. Agency, Inc. v. HUB Int'l, Ltd.*,
  No. 2:13-CV-528, 2014 WL 5389936, 2014 U.S. Dist. LEXIS 153094  (E.D. Tex. Mar. 25, 2014) ...................................................................................................................... 4

*Uniloc 2017 LLC v. Apple Inc.*,
  No. 6-19-CV-00532-ADA, Dkt. No. 72, 2020 WL 3415880, 2020 U.S. Dist. LEXIS 109037 (W.D. Tex. June 22, 2020) ................................................................................. 1, 4

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................... 1, 3, 11

Plaintiff USC IP Partnership, L.P. ("USC IP") submits this response in opposition to Defendant Facebook, Inc.'s ("Facebook") Motion to Transfer, Dkt. No. 16 (the "Motion").

## I. INTRODUCTION

The Motion is exactly the type of unsupported, sparse transfer motion that courts in this District and the Federal Circuit have rejected. In seeking a transfer to an allegedly more convenient forum, "[t]he burden that a movant must carry is not that the alternative venue is more convenient, but that it is <u>clearly</u> more convenient." *Uniloc 2017 LLC v. Apple Inc.*, No. 6-19-CV-00532-ADA, Dkt. No. 72, 2020 WL 3415880, 2020 U.S. Dist. LEXIS 109037, at *2 (W.D. Tex. June 22, 2020) (Albright, J.) (emphasis added) (denying a motion to transfer). Facebook has not satisfied the "significant burden" it undertook in bringing the Motion. *See id.* ("A party seeking a transfer to an allegedly more convenient forum carries a significant burden."). At best, Facebook has demonstrated its own unilateral preference to move the case to Austin. But Facebook's preferences do not drive the Court's analysis under 28 U.S.C. § 1404(a). Waco is undoubtedly more convenient for USC IP, its employees, and the inventors—all of whom are based in North Texas (*see infra*), and Facebook has failed to demonstrate that the Austin Division is "clearly more convenient" as the law requires.

## II. RELEVANT FACTS

A Texas company, Plaintiff USC IP maintains its principal place of business in Irving, where its founder Jeff Schueler originally founded Usability Sciences Corporation ("USC") in 1988. USC is USC IP's corporate affiliate. *See* Dkt. No. 1, Complaint ("Compl.") ¶¶ 1-2. In the 32 years since its founding, USC has not moved out of Irving, despite its success and prominence in the marketplace. USC IP, founded in 2019, has always been based in Irving as well. *Id.* All of USC's and USC IP's likely party witnesses live and work in North Texas, and have offices in

1

USC's Irving headquarters. *See id.*; *see also* Exs.[1] I, J, and L to Declaration of Jonathan Hardt ("Hardt Decl.").

Defendant Facebook is a Delaware company and maintains offices in this District, employing approximately 1,920 full-time employees here. *See* Dkt. No. 16-1, Declaration of Nicholas Wong In Support Of Motion ("Wong Decl.") at ¶¶ 2-3. But Facebook's papers conspicuously fail to mention that the Defendant has offices throughout the State of Texas—not just in Austin. Facebook currently has, or has announced plans to have, offices at the following locations:

- 300 West 6th Street, Austin, Texas 78701 (Compl. ¶ 5);
- 607 West 3rd Street, Austin, Texas 78701 (Compl. ¶ 5);
- 4500 Like Way, North Fort Worth, Texas 76177 (*See* Ex. A); and
- Dallas, Texas (hiring staff as of July 2020) (*See* Ex. D).

In particular, Facebook's Fort Worth campus, which includes a 200-acre data center with five full buildings, had at least 120 full-time employees in November 2016. *See* Ex. A; Ex. E; Ex. D (reporting "more than 200 jobs" for the Fort Worth location as of May 22, 2020). Facebook has conceded that it had at least 950 construction workers on-site daily during the construction of the buildings (*see* Ex. E), and it was reported that "[w]hen completed, the Fort Worth site will be Facebook's largest data center to date." *See* Ex. A. It was estimated that the North Fort Worth office would be valued at more than $1 billion. *See* Ex. B. But the Motion provides no evidence discussing Facebook's overall Texas contacts or whether any relevant employees or documents reside in Texas or at Facebook's various offices in Texas.

---

[1] Unless otherwise noted, all exhibits referenced herein are attached to the Hardt Declaration filed herewith.

Moreover, since the beginning of the COVID-19 pandemic, Facebook has had an official policy that allows its employees to work remotely—from their home or elsewhere—and they are not required to be physically present in a Facebook office for their work. *See* Ex. K. Facebook also plans to make the shift to remote working permanent for tens of thousands of its employees: the *New York Times* has reported that Facebook CEO Mark Zuckerberg announced during a staff meeting in May 2020 that "within a decade as many as half of the company's more than 48,000 employees could work from home." *See id*. And Facebook is actively hiring remote workers: earlier this week, there were 60 remote jobs open on Facebook's careers website. *See* Ex. C. Even Facebook's Dallas office appears to be envisioned as a "hub" rather than a traditional "office"—a Facebook spokesperson confirmed to the *Dallas Morning News* that the Dallas office "will allow people <u>working nearby</u> the opportunity to attend important training sessions, team meetings, social events, and build community." Ex. D (emphasis added).

It is notable that the four-paragraph Wong Declaration that Facebook submitted in support of the Motion provides <u>no evidence</u> discussing where Facebook's remote employees are working, who they are, or whether they have relevant knowledge or information. Given the ongoing COVID-19 pandemic, and Facebook's publicly announced remote-working policy, it appears likely that most, if not all, of the Facebook employees formerly working in the Austin office are not, in fact, physically in the Austin office on a regular basis. But the Motion fails to specify where they are.

## III.    LEGAL STANDARD

A party may request that the trial court exercise its discretion to transfer a case to a different district or division "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). "A party seeking a transfer to an allegedly more convenient forum

3

carries a significant burden," and must demonstrate that the transferee venue must be "clearly more convenient." *Uniloc*, 2020 U.S. Dist. LEXIS 109037, at *2, 9 (denying motion to transfer); *see also Sanger Ins. Agency, Inc. v. HUB Int'l, Ltd.*, No. 2:13-CV-528, 2014 WL 5389936, 2014 U.S. Dist. LEXIS 153094, at *5 (E.D. Tex. Mar. 25, 2014) (Gilstrap, J.) (denying defendants' motion to transfer because they failed to carry their burden of "clearly more convenient"—"a difficult burden to carry").  The plaintiff's choice of venue receives "partial deference" from the Court, which means that the transferee court must be "clearly more convenient" to justify transfer, not just a "little more convenient." *Uniloc*, 2020 U.S. Dist. LEXIS 109037, at *10; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected").

A motion to transfer, including for intra-district transfer, is evaluated using a two-step analysis based on public and private interest factors. *See In re Volkswagen of Am., Inc.,* 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").  The Court's consideration of these factors looks to the entirety of the case—not just the facts and factors that are pertinent only to the defendant who wants a transfer. *See, e.g.*, *Gaspard v. United States*, No. 2:19-CV-01206, 2020 U.S. Dist. LEXIS 26426, at *8-9 (W.D. La. Feb. 14, 2020) (denying motion for intra-district transfer even though defendants had to travel approximately 100 miles to the would-be transferor division); *Garrett v. Hanson*, 429 F. Supp. 3d 311, 319 (E.D. Tex. 2019) (Gilstrap, J.) (denying motion for intra-district transfer from Marshall to Tyler when defendant's witnesses would fly into DFW, and the Tyler Division is closer to the airport).

And when the movant fails to provide a specific identification of the relevant witnesses and potential sources of proof, courts have denied the motion to transfer: "Any such unsupported

4

request to transfer such proposed venue *must* be denied." *See, e.g.*, *Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446, 2019 U.S. Dist. LEXIS 213039, at *11-14 (E.D. Tex. Dec. 10, 2019) (Gilstrap, J.) (denying motion for intra-district transfer due to "exceptionally sparse" evidence) (emphasis added); *In re Apple Inc.*, 743 F.3d 1377 (Fed. Cir. 2014) (applying Fifth Circuit law and denying defendant's writ of mandamus on its denied motion to transfer given defendant's lack of evidence supporting the motion).

### IV. ARGUMENT

Facebook's unilateral preference for the Austin Division does not carry the movant's evidentiary burden to demonstrate that the Austin Division is clearly more convenient than the Waco Division. And Facebook has failed to provide any evidence that would demonstrate that Austin is clearly more convenient than Waco in this case. The Motion's evidence discussing Facebook's various contacts with the Western District of Texas consists of two sparse paragraphs in the Wong Declaration:

> 3. Since 2010, Facebook has maintained offices in Austin, Texas. Approximately 1,920 full-time employees work there as of today. Beside its offices in Austin, Facebook has no other offices in the Western District of Texas. Facebook does not have any offices in Waco, Texas.
>
> 4. To the extent there are any Facebook documents or materials relevant to Facebook News Feed in the Western District of Texas, they are located in Austin, Texas.

Wong Decl., Dkt. No. 16-1, at ¶¶ 3-4. The entirety of the Wong Declaration is only four paragraphs in total. The only other evidence Facebook has placed in the record is a collection of publicly available information collected by its lawyers, such as flight information from Expedia.com. *See* Dkt. No. 16-2, Declaration of Cameron Vanderwall In Support Of Motion, at ¶¶ 3-11.

5

Facebook has failed to provide the Court with sufficient evidence to tip even a single public or private interest factor in favor of transfer. As shown below, the Waco Division is more convenient for USC and its witnesses. Because Facebook has not carried its burden, USC IP's choice of venue should be respected.

### A. The Austin Division Is Not More Convenient Than Waco Based On Private Factors.

The Austin Division is not more convenient than the Waco Division, much less <u>clearly</u> more convenient as is required to justify transfer from the plaintiff's chosen forum. At least three of the private interest factors weigh against transfer, and the remaining factors are neutral. Given the evidence and these factors, the requested would be improper.

#### 1. The Parties' Relative Ease of Access to Evidence Militates Against Transfer.

Facebook bears the burden of showing that transfer will result in more convenient access to specifically identified, material sources of proof. *See Diem LLC v. BigCommerce, Inc.,* No. 6:17-cv-00186-JRG, 2017 WL 6729907, 2017 U.S. Dist. LEXIS 213264, at *2 (E.D. Tex. Dec. 28, 2017) (Love, J.) ("failure to identify . . .with specificity . . . the documents and the location of the documents is a failure of the moving party to meet its burden on transfer"). Facebook fails to meet this burden.

Facebook asserts that "a majority of the witnesses and evidence from Facebook . . . will come from Northern California or outside the state of Texas." Mot. at 5. But Facebook does not identify a single specific witness, nor does it identify where exactly any specific witnesses are located. Given Facebook's vague assertion that the "majority" of evidence and witnesses for Facebook are located outside of Texas, there is nothing that makes Austin clearly more convenient than Waco in ease of access to evidence. Facebook argues that "no potential party witnesses or pertinent documents are likely to be located in the Waco Division." Mot. at 5. But without

6

knowing who Facebook's likely witnesses are, because the Motion conspicuously fails to identify them, there is no way for the Court to evaluate the Motion's vague assertion. And given Facebook's current remote working policy in effect at all of its North America offices, it would appear likely that at least *some* witnesses may be located in one of the 13 counties (and 11,633 square miles) that comprise the Waco Division.

Facebook also posits that "[t]o the extent there are any relevant documents or materials in the Western District of Texas, those are located in Austin." *Id.* That is another generalized statement that falls short of the evidentiary standard that Facebook was required to satisfy to demonstrate that Austin is clearly more convenient. *See Invitrogen Corp. v. Gen. Elec. Co.,* No. 6:08-cv-113, 2009 WL 331889, 2009 U.S. Dist. LEXIS 9113, at *2 (E.D. Tex. Feb. 9, 2009) (Love, J.) ("[G]eneral statements fail to show that transfer would make access to sources of proof either more or less convenient for the parties."); *Hammers,* 2019 U.S. Dist. LEXIS 213039, at *11-12 (denying motion to transfer when the movant failed "to provide the factual foundation that is necessary to evaluate the relative convenience of the present and proposed venues . . ."). But even if Facebook's assertion were taken as fact, any relevant hard copy documents that are physically located in Austin would make transfer only slightly more convenient for Facebook, given that Facebook alleges that only a minority of the relevant documents are in Texas at all.[2]

---

[2] In yet another example of the Motion's deficiencies, Facebook does not state whether or not the documents or materials are actually hard copy. Given the nature of Facebook's business, and the fact that the vast majority (if not all) of its employees are currently working remotely, it seems likely that there will be very few (if any) hard copy documents that would physically "come from Northern California or outside the state of Texas." Mot. at 5. Of course, Facebook concedes that "technological advances . . . lighten the relative inconvenience of transporting large amounts of documents across the country," but the Motion does nothing to inform the Court about the extent to which this element is at play in this case.

The reality, however, is that the evidence submitted by Facebook begs multiple questions that are left unanswered by the Motion: Who (and where) are the specific witnesses that Facebook contends are relevant to this case? Which Facebook employees are working remotely in Central or North Texas, and how close are they to Waco? What (and where) are Facebook's relevant documents and materials? What, if any, relevant evidence is located in the Western District of Texas? What, if any, relevant evidence is located in the Northern District of Texas, *i.e.* closer to Waco than to Austin? What, if any, relevant evidence is in Northern California or elsewhere? The Court and USC IP are left to guess. Adding to the lack of clarity is the fact that the Motion entirely fails to mention the existence of Facebook's Fort Worth campus—the company's "largest data center to date."[3]

The Motion thus stands in stark contrast to the cases it cites for transfer—cases in which the movants included specific evidence to support their assertions on this factor, including "a list of Austin employees who might serve as potential witnesses in [the] case," with information about their particular knowledge, and even information about a particular witness who was in the process of moving to Austin. *See, e.g.*, *Datascape, LTD. v. Dell Techs., Inc.*, No. 6:19-CV-00129-ADA, Dkt. No. 44, 2019 WL 4254069, 2019 U.S. Dist. LEXIS 154170, at *5-6 (W.D. Tex. June 7, 2019) (Albright, J.) (granting motion to transfer to Austin Division from Waco Division).

By contrast, given the fact that Facebook does have a material and meaningful presence in the Western District, the Waco Division is more convenient for USC IP and its witnesses and the named inventors. The majority of documents and witnesses for USC IP are located in Dallas

---

[3] It is notable that Facebook's $1 billion, 200-acre, five-building campus in Tarrant County, which employs at least 120 people, is mentioned nowhere in the Motion, nor in the Wong Declaration. *See* Ex. E. What about relevant documents or other materials in Fort Worth, which is physically closer to Waco than to Austin? The Motion does not state whether any such documents and materials exist.

and/or Irving, Texas. *See* Compl. at 1. USC IP has its principal place of business in Irving. *Id.* All three of the named inventors live in North Texas, closer to Waco than to Austin. *See* Ex. F. And USC IP is likely to call the inventors at trial. *See* Hardt Decl. ¶ 14. The distance from Dallas to Waco is under 100 miles, while the distance from Dallas to Austin is 211 miles.[4] For USC IP, the Waco Division is clearly more convenient for relative ease of access to evidence. *See In re Radmax, Ltd.,* 720 F.3d 285, 288 (5th Cir. 2013) (noting that if venues are more than 100 miles apart, the burden of travel increases in direct relationship to the additional distance travelled over 100 miles). Because Waco is clearly more convenient for USC IP, and because Austin may at most be slightly more convenient for only Facebook (and even that is debatable given the Motion's lack detail and supporting evidence), this factor weighs in favor of denying transfer.

## 2. The Cost Effectiveness of Attending Court Proceedings in Each Division Favors Denying the Motion.

The second and third factors address the Court's ability to secure the attendance of witnesses (and the cost of their attendance), both of which undermine the Motion's assertion that Austin is clearly more convenient. The third factor "appropriately considers the cost of attendance of all willing witnesses." *Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.,* No. 14-CV-464, 2014 WL 12479284, 2014 U.S. Dist. LEXIS 191022, at *5 (W.D. Tex. Aug. 12, 2014) (Yeakel, J.). But "[t]he convenience of non-party witnesses is accorded the most weight." *BNSF Ry. Co. v. OOCL (USA), Inc.,* 667 F.Supp.2d 703, 711 (N.D. Tex. 2009) (Means, J.). In all likelihood, the only witnesses that may have to travel to Waco are trial witnesses, which is a relatively small

---

[4] Facebook contends that the cost of attendance for willing witnesses (for both sides) would be lower in the Austin Division than in the Waco Division. *See* Mot. at 7 n. 4. But direct flights from Northern California to Dallas are plentiful and priced under $250. *See* Exs. G and H. And the drive from there to Waco is relatively short and pleasant: about 100 miles of freeway driving for both Facebook and USC IP.

subset of the witnesses who will be deposed in this case, and Facebook has not identified the identity, role, or location of even a *single* witness who is located in the Austin Division. *See supra* (citing the sparse information provided in ¶¶ 3-4 of the Wong declaration). So the only non-party witnesses that are known to be likely trial witnesses are the three inventors, all of whom reside in the Dallas/Fort Worth area, closer to Waco than to Austin. *See* Hardt Decl. ¶ 7; *see also* Ex. F.

For party witnesses, the Motion argues that Facebook's witnesses (and any potential third-party witnesses) will be inconvenienced if the case is tried in Waco, but the Motion fails to identify even a single witness, let alone specify where any such witness is supposedly located. Mot. at 6-7. The vagueness of Facebook's submission is particularly troubling here because, given its remote working policy, Facebook's witnesses could literally be anywhere in the world.[5] Furthermore, while this factor requires the Court to consider "the cost of attendance of *all* willing witnesses," Facebook discounts the additional cost imposed on USC IP's party witnesses (and non-party witnesses) in North Texas, and focuses only on the supposed convenience of Facebook's witnesses. *See Mimedx*, 2014, WL 12479284, at *2 (emphasis added). As discussed above, Dallas is less than 100 miles from the Waco Division, while Austin is 211 miles away. As the Fifth Circuit has explained, "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 204-05 (5th Cir. 2004). So the transfer that Facebooks seeks would impose a material change in inconvenience on USC IP's witnesses in

---

[5] This fact also cuts against the Motion's argument that "the witnesses could work out of Facebook's Austin offices while waiting to testify if this case reaches trial." Mot. at 6. According to Facebook, those witnesses can work anywhere they want, including in Waco during trial. *See* Ex. K.

10

North Texas.  And transfer would impose inconvenience on the non-party witnesses (such as the named inventors) who live in North Texas within easy range of Waco.  *See* Ex. F.  Therefore, the Court's ability to secure attendance of witnesses weighs in favor of denying the Motion.  In contrast, Facebook's unidentified witnesses who may (or, because the Court is left to guess, may not) be located in Northern California are roughly 1,500 miles away from both Waco and Austin.  Because the parties are split as to which Division would be more convenient, and because potential non-party witnesses will find the Waco Division more convenient, these factors weigh against transfer.

### 3. The Cost of Trial Is Neutral.

On the fourth factor—making trial easy, expeditious, and inexpensive—the Motion asserts that transfer would not result in any meaningful delay or prejudice because the case is in early stages, but then makes a leap in logic to argue that this factor weighs in favor of transfer.  While it is true that there is unlikely to be significant delay associated with transfer, a typical delay is not to be taken into consideration on a motion to transfer.  *In re Radmax Ltd.*, 720 F.3d at 289 ("We clarify today that garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer.").  This factor is therefore neutral, and certainly not in the Motion's favor.

### 4. The Local Interest in Deciding the Case Does Not Support Transfer.

The sixth factor—the local interest in deciding localized issues of the case—does not clearly weigh in favor of transfer.  The Motion focuses on the presence of its large offices and (pre-pandemic) headcounts in Austin, but that alone is not sufficient to justify transfer.  *See* Mot. at 7; *Ctr. for Biological Diversity v. McCarthy*, No. 14-cv-05138-WHO, 2015 WL 1535594, 2015 U.S. Dist. LEXIS 44853, at *16 (N.D. Cal. Apr. 6, 2015) ("Although each potential transferee

11

forum has a slightly stronger localized interest than this District, the private and public interest factors, in total, do not make transfer appropriate."). The accused technology is prevalent throughout the United States—in Waco as well as Austin—and Facebook's infringement as alleged in the Complaint is pervasive throughout the Western District of Texas (and both Divisions at issue in the Motion), and all others.[6] *See* Compl. ¶¶ 31-47. Given the lack of evidence submitted by Facebook, there is no way to know whether the local interest currently lies in Austin any more than it does in Waco.

### 5. The Remaining Factors Are Neutral.

Facebook concedes that the remaining factors are neutral and do not favor transfer. Specifically, Facebook is not seeking reassignment to another judge, there are no issues of court congestion between the two Divisions, and there is no conflict of law between the two Divisions.

### V. CONCLUSION

Facebook has failed to provide the Court with evidence sufficient to demonstrate that the Austin Division would be a clearly more convenient venue. As such, the Motion has failed to meet the required evidentiary burden. USC IP therefore respectfully submits that the Court should deny the Motion in its entirety.

Dated: October 9, 2020                      Respectfully submitted,

                                             By: */s/ Fred I. Williams*
                                             Fred I. Williams
                                             Texas State Bar No. 00794855
                                             Michael Simons
                                             Texas State Bar No. 24008042
                                             Jonathan L. Hardt
                                             Texas State Bar No. 24039906

---

[6] USC IP would obviously appear for pre-trial hearings in Austin if the Court were to order it, but the trial should undeniably be held in Waco.

Chad Ennis
Texas State Bar No. 24045834
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com
jhardt@wsltrial.com
cennis@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

*Attorneys for Plaintiff USC I.P. Partnership, L.P.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 9, 2020, the undersigned caused a copy of the foregoing document to be served on all counsel of record via the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

*/s/ Fred I. Williams*
Fred I. Williams
