** FILED UNDER SEAL – RESTRICTED – ATTORNEYS' EYES ONLY **

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| USC IP PARTNERSHIP, L.P., | |
| Plaintiff, | CIVIL ACTION NO. 6:20-cv-555 |
| v. | |
| FACEBOOK, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

**USC'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY**

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF THE ISSUES ............................................................................. 2

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................... 2

IV.   LEGAL STANDARDS ............................................................................................ 3

V.   ARGUMENT ............................................................................................................ 5

    1.   USC Is Entitled To Partial Summary Judgment Because Facebook Failed To Show That Use Of The ████████████ Would Disclose To The Public Every Element Of The Asserted Claims. .................................................................. 5

        A.   Facebook failed to show by clear and convincing evidence that each and every limitation of the asserted claims is disclosed by the combinations identified by its expert. .................................................................. 9

    2.   USC Is Entitled To Partial Summary Judgment Because Facebook Failed To Show That Use Of ████████████ Would Disclose To The Public Every Element Of The Asserted Claims. ......................................................... 12

VI.   CONCLUSION ...................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allied Colloids Inc. v. Am. Cyanamid Co.*,
   64 F.3d 1570 (Fed. Cir. 1995) ........................................................................................ 5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................................ 4

*Boyd v. State Farm Ins. Co.*,
   158 F.3d 326 (5th Cir 1998) ........................................................................................... 4

*Celotex v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................ 4

*Dey, L.P. v. Sunovion Pharm., Inc.*,
   715 F.3d 1351 (Fed. Cir. 2013) ............................................................................. 6, 10, 11

*Duplantis v. Shell Offshore, Inc.*,
   948 F.2d 187 (5th Cir. 1991) .......................................................................................... 4

*Moleculon Research Corp. v. CBS, Inc.*,
   793 F.2d 1261 (Fed. Cir. 1986) ...................................................................................... 5

*OddzOn Prods. v. Just Toys*,
   122 F.3d 1396 (Fed. Cir. 1997) ...................................................................................... 1

*Parallel Networks Licensing, LLC v. IBM*,
   No. 13-2072, 2017 U.S. Dist. LEXIS 28461 (D. Del. Feb. 22, 2017) ........................ 7

*Smith & Griggs Mfg. Co. v. Sprague*,
   123 U.S. 249 (1887) ........................................................................................................ 5

*Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp.*,
   No. 2:09 CV 1100, 2012 U.S. Dist. LEXIS 650 (W.D. La. Jan. 3, 2012) ................. 4

*TQP Dev., LLC v. 1-800-Flowers.com, Inc.*,
   120 F. Supp. 3d 600 (E.D. Tex. 2015) ...................................................................... 6, 8

*Verdegaal Bros., Inc. v. Union Oil Co.*,
   814 F.2d 628 (Fed. Cir. 1987) .................................................................................. 5, 10

*W.L. Gore & Assocs. v. Garlock, Inc.*,
   721 F.2d 1540 (Fed. Cir. 1983) ...................................................................................... 5

**Statutes**

35 U.S.C. § 102................................................................................................................... passim

Fed. R. Civ. P. 56(a) ................................................................................................................. 4

Fed. R. Civ. P. 56(e) ................................................................................................................. 4

## I.      INTRODUCTION

Plaintiff USC IP Partnership, L.P. ("USC") moves for partial summary judgment on Facebook, Inc.'s ("Facebook") claims and affirmative defense of invalidity.  It is canon that "the patent laws have not generally recognized as prior art that which is not accessible to the public." *OddzOn Prods. v. Just Toys*, 122 F.3d 1396, 1402 (Fed. Cir. 1997).  "[W]hen the possessor of secret art (art that has been abandoned, suppressed, or concealed) that predates the critical date is faced with a later-filed patent, the later-filed patent should not be invalidated in the face of this 'prior' art, which has not been made available to the public."  *See id.*

Facebook asserts that the '300 Patent is invalid based on the so-called ███████████ ███████  That assertion necessarily relies on information that was never accessible to the public, including ██████████████████████████████████████  Facebook had no choice but to rely on ████████████████████because the public-facing Facebook website never provided any indication of how the information displayed to the user was generated (as is required by the claims).  Accordingly, USC is entitled to judgment as a matter of law that the asserted claims of the '300 Patent are not invalid in view of the ████████████████

Facebook also asserts that the '300 Patent is invalid based on the so-called ██████████ ████████████ and ████████████████████  Conspicuously absent from Facebook's evidence regarding alleged use of these systems are screenshots from the systems.  ███████████████████ ████████████████████████████████████ never provided any indication of how the information displayed to the user was generated (as is required by the claims).  Accordingly, USC is entitled to judgment as a matter of law that the asserted claims of the '300 Patent are not invalid in view of the ████████████████████



## II.      STATEMENT OF THE ISSUES

Whether this Court should grant summary judgment of no invalidity on Facebook's claim of invalidity under the public use prong of 35 U.S.C. § 102(b) because ███████████████ was not publicly accessible.

Whether this Court should grant summary judgment of no invalidity on Facebook's claim of invalidity under the public use prong of 35 U.S.C. § 102(b) because the ████████████ ███████████████ were not publicly accessible.

## III.      STATEMENT OF UNDISPUTED MATERIAL FACTS

<u>UMF No. 1:</u>  U.S. Patent No. 8,645,300, was filed on July 20, 2011, and issued on February 4, 2014.

<u>UMF No. 2:</u>  Facebook asserts that claims 1-17 of the '300 Patent are invalid, as anticipated or obvious, in view of the ███████████████  Ex. 1, Expert Report of Nathaniel Polish, Ph.D. Regarding Invalidity of U.S. Patent No. 8,645,300, ¶190, ¶¶1184-1585.

<u>UMF No. 3:</u>  Facebook uses the term ████████████████████████████ █████████████████████████████████████████████████ ███████████████  Ex.1, p. 73, n.14.

<u>UMF No. 4:</u>  Facebook uses the term ████████████████████████████ ██████████████████████████████████████████████████ Ex. 1, p. 73, n.14.

<u>UMF No. 5:</u>  ███████████████████████ was not sold in in this country.  Ex. 2, Polish Dep. Tr. 151:9-13 (Sep. 24, 2021).

<u>UMF No. 6:</u>  Facebook relies on four categories of evidence to support its prior-art invalidity defense of the ██████████████████████████████



Ex. 1, ¶¶175-182.

UMF No. 7:  Category (1)—██████████████████████—was not

publicly accessible before July 20, 2010.  Ex. 1, ¶172 ████████████

██████████████████████████ Ex. 2, Polish Dep. Tr. 155:3-7 (Sep. 24

, 2021); Ex. 3, Vickrey Dep. Tr. 180:5-17 (July 9, 2021).

UMF No. 8:  Category (2)—██████████████████████████

███████████—were not publicly accessible before July 20, 2010.  Ex. 1, Polish Report ¶172

████████████████████████████████████████

██████ Ex. 2, Polish Dep. Tr. 155:8-17, 155:25-156:9 (Sep. 24 , 2021).

UMF No. 9:  A user of the ████████████would not be able to readily discern the

claimed features of the '300 Patent through use of the ██████████alone.  Ex. 2, Polish Dep.

Tr. 164:9-166:9 (Sep. 24 , 2021).

UMF No. 10:  Facebook uses the term ████████████████ to refer to ████████

██████████████████ operated.  Ex. 1, ¶141.

UMF No. 11:  Facebook uses the term ████████████████to refer to how the ████

██████████████████ operated.  Ex. 1, ¶141.

UMF No. 12:  A user of either the ████████████████ or the ████████████

██████would not be able to readily discern the claimed features of the '300 Patent through use of

either system alone.  Ex. 2, Polish Dep. Tr. 29:19-32:17 (Sep. 24, 2021).

## IV.   LEGAL STANDARDS

Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  If the non-movant bears the burden of proof on an issue, the movant is entitled to summary judgment by demonstrating that the non-movant failed to proffer sufficient evidence to make a prima facie case.  *See Celotex*, 477 U.S. at 323.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The summary judgment standard evaluates whether there is a genuine issue of material fact based on admissible evidence.  *See, e.g.*, *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991) ("It has long been settled law that a [party] must respond to an adequate motion for summary judgment with admissible evidence."). Expert opinion, by itself, is insufficient to create a genuine issue of material fact to withstand summary judgment.  *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 331 (5th Cir 1998) ("For the purposes of summary judgment under Fed. R. Civ. P. 56(e), an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion."); *see also Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp.*, No. 2:09 CV 1100, 2012 U.S. Dist. LEXIS 650, at *8-9 (W.D. La. Jan. 3, 2012) ("Although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment, an expert opinion must contain more than mere conclusions.").

The public use bar of 35 U.S.C. § 102(b) requires that:  "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. . . ."  "A 'public use' for the purpose of barring access to the patent system is a use more than a year before the patent filing date, whereby a completed invention is used in public, without restriction and in circumstances other than 'substantially for the purposes of

-4-

experiment.'" *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995),

*quoting Smith & Griggs Mfg. Co. v. Sprague*, 123 U.S. 249, 256 (1887).  Patent invalidity based

on public use is required to be proved by clear and convincing evidence.  *Allied Colloids Inc. v.*

*Am. Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995), *citing Moleculon Research Corp. v. CBS,*

*Inc.*, 793 F.2d 1261, 1266 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1030, (1987).  Invalidity under

the public use bar of 35 U.S.C. § 102(b) is an affirmative defense, and therefore the burden of

proof is on the party attacking the validity of a patent on that basis.  *Allied Colloids Inc. v. Am.*

*Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995).

**V.   ARGUMENT**

> **1.   USC Is Entitled To Partial Summary Judgment Because Facebook Failed To Show That Use Of The ███████████████ Would Disclose To The Public Every Element Of The Asserted Claims.**

Facebook contends that the ██████████████ anticipates the claims of the '300 Patent

under the public use prong of 35 U.S.C. § 102(b).  "A claim is anticipated only if each and every

element as set forth in the claim is found, either expressly or inherently described, in a single prior

art reference."  *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987).  For

invalidity by public use of a system, the use of the system must, by itself, place the claimed systems

and methods in the possession of the public.  *W.L. Gore & Assocs. v. Garlock, Inc.,* 721 F.2d 1540,

1549 (Fed. Cir. 1983) ("There is no evidence that a viewer of the machine could thereby learn

anything of which process, among all possible processes, the machine is being used to practice . .

. it was error to hold that Budd's activity with the Cropper machine, as above indicated, was a

'public' use of the processes claimed in the '566 patent, that activity having been secret, not

public").  Key to the public use prong is the public having access to and being able to discern the

claimed features of the invention:  "[I]f members of the public are not informed of, and cannot

readily discern the claimed features of the invention in the allegedly invaliding prior art, the public

has not been put in possession of those features." *Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351, 1359 (Fed. Cir. 2013).  Rather, the alleged public use must place the claimed features of the claims in the public's possession.  *See TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, 120 F. Supp. 3d 600, 615-16 (E.D. Tex. 2015).  Use of the ██████████████ by itself, fails to place the claimed inventions of the '300 Patent in the possession of the public.

As Facebook's expert, Dr. Polish, describes it, the ████████████████████



███████████████████████ UMF No. 4.  █████████████████████

█████████████████  *See* Ex. 2, Polish Dep. Tr. 155:3-7 .  The ██████████████

████████████████████  Ex. 1, Polish Report ¶¶171. ████████

████████████████████████████  *Id.* at

¶¶172 ████████████████████████

████████  This is relevant because the claims require that the webpages are generated in a specific way, using specific inputs and algorithms.

Each independent claim (claims 1, 5, and 11) requires an "intent engine."[1]  Claim 1 further requires, for example, processing an input parameter in the intent engine to determine at least one inferred intent.  That inferred intent is then provided to a web browser so that it can be displayed in a webpage.  The intent engine then receives a confirmed intent that the intent engine processes to determine at least one recommended webpage, that is displayed to the user.  Then, the user is prompted to rank the recommended webpage, and that rank is stored in a datapoint, along with the identity of the webpage and the inferred intent.

---

[1] The Court construed the term "intent engine" to mean "a software component for collecting and analyzing intent data from visitors."

Similarly, independent claim 5 requires, for example, processing an indicated intent in the intent engine to determine one or more recommended webpages, which are displayed to the user. That processing specifically requires that "indicated intent" is used as a reference to intent ranking data that ranks a plurality of webpages for that intent, and that the intent data includes intent data provided by previous visitors to one or more webpages. Here again, the user is prompted for certain inputs and sees the results (i.e., the webpages) without seeing how those webpages are generated. There is no dispute that a user of the ███████████ would not be able to readily discern these claimed features through use of ██████ alone. UMF No. 9.

Independent claim 11 requires that the intent engine provide webpage recommendations in an intent tool and receive ranking data from a ranking tool. That ranking data is then stored in at least one database. As with the other independent claims, there is no dispute that a user of the ██████████████ would not be able to readily discern these claimed features through use of ████████ alone.

Facebook's expert never opines that the ████████████ by itself, places the elements of the claims in the possession of the public. UMF No. 9. Without additional disclosures through other supposed prior art references, no one could know how ████████ works simply by using ██████████ ████████████████████ does not disclose the systems and methods behind Facebook. *See* Ex. 3, Vickrey Dep. Tr. 15:2-17 (July 9, 2021). These details would be necessary to discern whether the ███████████████ discloses the claims of the '300 Patent. Such disclosure is required by anticipation by public use. As a result, use of the ████████████ cannot render the claims of the '300 Patent invalid as a matter of law.

This case bears striking similarity to the facts in *Parallel Networks Licensing, LLC v. IBM*. There, defendant IBM provided a web server to host the 1996 Masters golf tournament.  No. 13-2072, 2017 U.S. Dist. LEXIS 28461, at *22 (D. Del. Feb. 22, 2017).   The plaintiff, Parallel Networks, argued that it was "entitled to summary judgment because IBM's use of the web server was not 'public use.'"  *Id.*  There was no dispute that the server itself was accessible to the public and that "members of the public were able to submit web requests to the server and to receive web pages (web data) from the server."  *See id.* at *23.  But that public use did not disclose "any of IBM's internal network operations, including request-routing and load-balancing," which were required by the claims.  *See id.* at *22; *see also id.* at *23 ("In their interactions with the Masters server, members of the public did not manage dynamic web requests, nor did they route requests or process requests.  All of those actions were carried out exclusively, and confidentially, by IBM's servers.").  Acknowledging *Lockwood*, the *Parallel Networks* court found that use of the IBM Masters server was not public use.  *See id.* at *22-24.  Use of the ██████████████ is no different: ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████ which is required to disclose the claimed invention.  And Facebook's expert does not opine that it did.

In another example, the court in *TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, was presented with the question of whether public demonstration of a software product (Lotus Notes) constituted public use of the invention when some of the claimed features were disabled (the RC4 feature). *See* 120 F. Supp.3d at 615.  The court concluded that such public demonstrations did not constitute public use.  *See id.* ("Thus, a reasonable jury could have concluded that public use of the Lotus Notes *without* RC4 program at Lotus Week was not enough to place the claimed features of the

'730 patent in the public's possession.").  In doing so, the court expressly rejected the defendant's argument that "the prior inventor need not divulge the 'innards' of the invention to the public to be public use."  *See id.*  The court also recognized that the holding in *Lockwood* applies only when "public use of the high-level aspects of the [prior invention] was enough to place the *claimed* features of the [patent in question] in the public's possession."  *See id.* at 616.  That is not the case here, nor has anyone opined that it is.

In both instances, the details matter—the details regarding whether the public use disclosed the claimed invention.  Facebook bears the burden of clear and convincing evidence that the claims of the '300 Patent are invalid based on public use of the '300 Patent.  Mere public accessibility to ██████████████████████████ is not sufficient.  *See id.* ("The details matter, and Defendant hand-waves over the details concerning what does and does not need to be disclosed in the prior invention to ensure that the public has access to all elements of the claimed invention; yet, this type of detail would be precisely the type of detail—especially in the face of confidentiality agreements to the contrary—that would have been needed meet the clear and convincing burden that the patent was invalid due to public disclosure or use.").

There is no genuine issue of material fact that a user of the ████████████████ would not be able to readily discern the claimed features of the '300 Patent through use of ████████ alone.  UMF No. 9.  That is required for anticipation through public use, and accordingly, USC is entitled to summary judgment that the ████████████████ does not anticipate the claims of the '300 Patent under the public use prong of 35 U.S.C. § 102(b).

> A.   Facebook failed to show by clear and convincing evidence that each and every limitation of the asserted claims is disclosed by the combinations identified by its expert.

Even though Facebook argues that the ████████████████ anticipates the claims of the '300 patent, Facebook's expert impermissibly relied on multiple purported prior art references to

find disclosure.  But even using multiple references, Facebook's expert fails to show that each element of each asserted claim is disclosed.

Facebook must show, by clear and convincing evidence, that each and every claim limitation of the '300 Patent was disclosed through public use of the ███████████████ *See Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d at 631.  Even if Facebook's ██████████ are admissible, they fail to disclose certain limitations of the claims of the '300 Patent.  Accordingly, USC is entitled to judgment as a matter of law that the alleged ██████████ of the ██████████ ██████ does not anticipate claims 1-4, 7, and 11-17 of the '300 Patent.

Claim limitation 1[j] recites "storing a datapoint comprising an identity of the webpage, the inferred intent and the received rank."  '300 Patent at 18:57-58.  Facebook's only evidence that public use of the ██████████████ discloses this limitation is: ████████████████████ ██████████████████████████  Ex. 1, Polish Report ¶¶1349-1360.  ██████████████ ██████████████████████████████████████████████████████ ██████████  As a result, Facebook's only potential evidence is a ██████████████████ ██████████████████████████  Ex. 1, Polish Report ¶1353 (citing Ex. 4).  Dr. Polish's report contains a single sentence stating that ██████████████████████ ██████████████████ without <u>any</u> analysis.  *See id.*  His lack of analysis is not surprising because ████████████████████████████████████████████████████████████████ ██████████████████████████  *See generally* Ex. 4.  There is no reasonable dispute that ██████████ fails to describe "storing a datapoint comprising an identity of the webpage, the inferred intent and

---

[2] Public use under 35 U.S.C. § 102(b) requires that the public be able to "readily discern the claimed features of the invention in the allegedly invaliding prior art."  *See Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d at 1359.  ██████████████████ was not publicly accessible.  UMF No. 7.

the received rank" as recited in claim 1 of the '300 Patent.  Therefore Facebook cannot show, by clear and convincing evidence, that each and every claim limitation of claim 1 of the '300 Patent was disclosed through public use of the ███████████████  Moreover, claims 2-4 depend from claim 1, so Facebook can not make the requisite showing for those claims for the same reason as claim 1.

Claim 7 recites "The method according to claim 6 wherein determining the ranked list comprises processing a plurality of datapoints, each datapoint comprising:  an identity of a webpage of the namespace; an intent; and a ranking of the intent for the respective webpage." '300 Patent at 19:23-28.  Facebook relies on the same evidence for claim 7 that it did for claim limitation 1[j].  *See* Ex. 1, Polish Report ¶1427.  Therefore Facebook cannot show, by clear and convincing evidence, that claim 7 of the '300 Patent was disclosed through public use of the ███████████ for the same reasons as claim limitation 1[j].

Claim 11 recites two limitations that pertain to data storage.  Claim limitation 11[e] recites "at least one database configured to store intent data." '300 Patent at 20:9.  Claim limitation 11[h] recites "receive ranking data from the ranking tool and store the ranking data in the at least one database." '300 Patent at 20:13-14.  Facebook's only evidence that public use of ███████ ██████████ discloses limitation 11[e] is: █████████████████████ Ex. 1, Polish Report ¶¶1504-1513.  █████████████████████████████ cannot be evidence of public use because it was not publicly accessible.[3]  Dr. Polish asserts that the ███████ discloses claim limitation 11[e], but provides <u>no</u> analysis.  *See id.*  Moreover, the ████████s silent regarding

---

[3] Public use under 35 U.S.C. § 102(b) requires that the public be able to "readily discern the claimed features of the invention in the allegedly invaliding prior art."  *See Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d at 1359.  ████████████████████████████████ UMF No. 7.

the actual types of data stored.  *See generally* Ex. 5.  There is no reasonable dispute that the ███

███ fails to describe "at least one database configured to store <u>intent data</u>" as recited in claim 11

of the '300 Patent.  Facebook's only evidence that public use of the ████████████████████

discloses limitation 11[h] of the '300 Patent is ███████ Ex. 1, Polish Report ¶¶1532-1539.

████████████████████████████ cannot be evidence of public use because it was

not publicly accessible, so Facebook has no evidence for claim limitation 11[h].  Therefore

Facebook cannot show, by clear and convincing evidence, that each and every claim limitation of

claim 11 of the '300 Patent was disclosed through public use of the ████████████████

Moreover, claims 12-17 depend from claim 11, so Facebook can not make the requisite showing

for those claims for the same reason as claim 11.

    **2.**     **USC Is Entitled To Partial Summary Judgment Because Facebook Failed To Show That Use Of The ████████████ Would Disclose To The Public Every Element Of The Asserted Claims.**

      Facebook contends that the ████████████████████████ are prior art under

only the "public use" provision of 35 U.S.C. § 102(b).  Ex. 2, Polish Dep. Tr. 25:5-12 (Sep. 24 ,

2021).  Use of either ██████ by itself, fails to place the claimed inventions of the '300 Patent in

the possession of the public.  As with the ████████████ Facebook's expert never opines

that use of ██████████ by itself, places the elements of the claims in the possession of

the public.  UMF No. 12.  Indeed Facebook's expert did not perform any analysis regarding

whether a user of ██████████ would be able to ascertain how the system works by using

it:



████████████████████████████████████████████

Ex. 2, Polish Dep. Tr. 30:13-31:4 (Sep. 24, 2021).  Speculation by the public of how ████ might

have worked is not applicable standard.  Facebook must show, by clear and convincing evidence

that use of ████████████ by itself, places the elements of the claims in the possession of

the public.  Facebook has no such evidence because it never ran ████████ from the perspective

of a public user.  Ex. 2, Polish Dep. Tr. 31:5-32:17 (Sep. 24, 2021).  Without additional disclosures

through other supposed prior art references, the public would not know how ██████████████

works simply by using them.  *See* UMF No. 12; Ex. 2, Polish Dep. Tr. 30:3-7 (Sep. 24 , 2021).  As

a result, use of ████████████ cannot render the claims of the '300 Patent invalid as a matter

of law.

## VI.   CONCLUSION

Facebook cannot win at trial on invalidity based on the undisputed evidence for any of the

████████████████████████████████████████ Partial

summary judgment of no invalidity should therefore be granted in favor of USC.


Dated:  October 5, 2021                     Respectfully submitted,

                                            By: */s/ Fred I. Williams*
                                            Fred I. Williams
                                            Texas State Bar No. 00794855
                                            Michael Simons
                                            Texas State Bar No. 24008042
                                            WILLIAMS SIMONS & LANDIS PLLC
                                            327 Congress Ave., Suite 490
                                            Austin, TX 78701
                                            Tel: 512-543-1354
                                            fwilliams@wsltrial.com
                                            msimons@wsltrial.com

                                            Todd E. Landis

State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

*Attorneys for Plaintiff USC IP Partnership, L,P.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 5, 2021, the undersigned caused a copy of the foregoing document to be served on all counsel of record via the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

*/s/ Fred I. Williams*
Fred I. Williams

## CERTIFICATE OF CONFERENCE

I certify that on October 5, 2021, Plaintiff's counsel, Sarah Tishler and Abdul Althebaity, and Defendant's counsel, Phillip Morton and Liz Stameshkin, met and conferred by telephone regarding this motion.  Counsel for Defendant indicated that they oppose this motion.

*/s/ Fred I. Williams*
Fred I. Williams

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Court's February 12, 2021 standing order regarding filing documents under seal in patent cases and redacted pleadings.

*/s/ Fred I. Williams*
Fred I. Williams