IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| USC IP PARTNERSHIP, L.P., *Plaintiff* | § § § § § § § § § | |
| -vs- | | 6:20-CV-00555-ADA |
| FACEBOOK, INC., *Defendant* | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Facebook, Inc.'s ("Facebook") Motion for Summary Judgement of Invalidity under 35 U.S.C. § 101. Dkt. 73. The Court heard the parties' arguments during the final pretrial conference held on December 6, 2021, and orally granted Facebook's Motion during the hearing and canceled the jury trial for this action originally scheduled to begin on December 13, 2021. Consistent with the Court's earlier oral ruling, the Court **GRANTS** Facebook's Motion for the reasons set forth below.

### I.   BACKGROUND

Plaintiff USC IP Partnership, L.P. ("USC") initiated this action on June 22, 2020 against Facebook, alleging infringement of only one patent: U.S. Patent No. 8,645,300 (the "'300 patent"). The Court held a Markman hearing on March 5, 2021. Dkts. 44 and 48. USC alleges that Facebook infringes claims 1–17 of the '300 patent (asserted claims) through the use of its Facebook News Feed. Dkt. 1 ¶¶ 7–12; Dkt. 119 at 3. On October 5, 2021, Facebook filed the instant motion, which was subsequently fully briefed by the parties (Dkt. 83, Opposition; Dkt. 95, Reply). The Court heard arguments regarding the motion on December 6, 2021 during the final pretrial conference, during which the Court orally granted Facebook's motion. Dkt. 143 (Hearing Transcript).

1

## II.     LEGAL STANDARD

### A.     Motion for Summary Judgement

"Summary judgment must be granted when, drawing all reasonable inferences in favor of the non-movant, there is no genuine issue as to any material fact." *Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1036 (Fed. Cir. 2011); Fed. R. Civ. P. 56(a). "Under 35 U.S.C. § 282, a patent is presumed valid and one challenging its validity bears the burden of proving invalidity by clear and convincing evidence." *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994). When "'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986); *see also Eli Lilly & Co. v. Barr Lab'ys, Inc.,* 251 F.3d 955, 962 (Fed. Cir. 2001) ("[A] moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise."). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor. *Eli Lilly & Co.*, 251 F.3d at 962.

### B.     Patent Eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act defines the subject matter eligible for patent protection: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, courts have long recognized that laws of nature, natural phenomena, and abstract ideas are not patentable under § 101 because they are "the basic

2

tools of scientific and technological work." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citations omitted).

In *Alice*, the Supreme Court articulated a two-step framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. *Id*. at 217. In *Alice* step one, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id*. In doing so, the court must be careful not to over generalize the invention because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id*. (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc*., 566 U.S. 66, 71 (2012)). Instead, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc*., 837 F.3d 1299, 1312 (Fed. Cir. 2016) (citation omitted). If the claims are not directed to one of those patent-ineligible concepts, the inquiry ends. If the claims are directed to one of those patent-ineligible concepts, then the inquiry proceeds to step two of the *Alice* framework.

In *Alice* step two, the court considers whether the claims contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217–18 (quotation omitted). In doing so, the court considers "the elements of each claim both individually and 'as an ordered combination'" to determine whether they are "'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id*. (quoting *Mayo*, 566 U.S. at 72–73). *Alice* step two is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer v. HP Inc*., 881 F.3d 1360, 1367 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 225 and *Content Extraction & Transmission LLC v. Wells*

3

*Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)). However, to recite an inventive concept, a patent must do more than recite an abstract idea "while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (quoting Mayo, 566 U.S. at 72). "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82. Likewise, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

"While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368. Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, [may] create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Id.* at 1369. However, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, [patent eligibility] can be decided on summary judgment as a matter of law." *Id.* at 1368.

### III.   DISCUSSION

#### A.   The Asserted '300 Patent

The '300 patent, titled "System and Method for Intent Data Processing," was filed in July 2011 and issued on February 4, 2014. The '300 patent recognizes that "[w]ebsites have become

valuable resources for companies to engage consumers and customers" and "[p]aramount to the success of a website is that visitors to the website can readily identify and navigate to the pages within the website that contain the information or perform the functions that correspond to the visitor's intent." The '300 patent at 1:11–17 (Background of the Invention). Therefore, the '300 patent recognizes the need for "improved systems and methods for determining a visitor's intent and for using the visitor's intent to predict and suggest webpages for the visitor." *Id.* at 1:18–20. Accordingly, the '300 patent provides a solution where "[w]ebsite navigation may be enhanced by recording a visitor's intent and recording page rankings that indicate how well the pages of a website match the visitor's intent." *Id.* at Abstract.

The '300 patent discloses "[a] system for collecting, analyzing and using intent data" as illustrated in Figure 1 (reproduced below), which "includes a web server 12 that provides web pages 13 to a user at a web browser 14," and "an intent engine 20 that collects and analyzes intent data from visitors as they browse webpages within a namespace." *Id.* at 2:42–46. An "intent tool 22" provides information collected from a user interface to the "intent engine 20," which "process[es] the intent and success information and learns to predict intent and intent-based destination pages." *Id.* at 2:50–3:2.



Figure 1

The '300 patent also discloses a method for "predicting the intent of a visitor to a webpage of a defined namespace" as illustrated in Figure 2 and a method for "predicting a navigation destination for the visitor" as illustrated in Figure 3 (both reproduced below). To predict the intent of a visitor, "[a]t step 101, the intent engine 20 receives input parameters, such as a URL or similar webpage identity from the web browser of a visitor," "[t]he intent engine processes the input parameters (step 102), for example by referencing historical intent data, to infer one or more intents of the visitor," and "[a]t step 103, the inferred intents are provided to the web browser for display to the visitor." *Id*. at 3:37–45.



Figure 2

To predict a navigation destination for the visitor, "[a]t step 201, the visitor is prompted to indicate an intent," "[t]he indicated intent is received into the intent engine (step 202) and processed to determine one or more web page recommendations (step 203)," where "[t]he intent engine may use the indicated intent to reference to historical intent data provided by previous visitors to the webpages of the namespace," and "[t]he web page recommendations may be provided to the visitor web browser (step 204) for display to the visitor, e.g., as hyperlinks to the recommended web pages." *Id*. at 3:46–56.



Figure 3

The '300 patent provides an example in Figure 4 (reproduced below) explaining how the intent tool works. In the example, the "current intent 31" is a "D820 RAM upgrade." *Id.* at 6:20–21. "Based on the current intent, the [intent tool] displays a recommendation 32[, which is DELL Latitude D820 RAM Upgrades in the example,] that provides a hyperlink to a webpage within the namespace that is most likely to provide the information that the visitor is seeking, *i.e.*, that matches the current intent." *Id.* at 6:24–33. The user can change the current intent by selecting a different intent from a dropdown menu 35 or by typing in a new intent, view and select other recommendations from a dropdown menu 36, and rate the recommendations via a rating tool 33. *Id.* at 6:19–38.



Figure 4

The '300 patent includes 17 claims in total, of which claims 1, 5, and 11 are independent. USC asserts all 17 claims against Facebook. Facebook states that claim 1 is representative (Dkt. 73 at 5–7), which USC does not contest. Claim 1 of the '300 patent provides:

> 1. A method for predicting an intent of a visitor to a webpage, the method comprising:
> receiving into an intent engine at least one input parameter from a web browser displaying the webpage;
> processing the at least one input parameter in the intent engine to determine at least one inferred intent;
> providing the at least one inferred intent to the web browser to cause the at least one inferred intent to be displayed on the webpage;
> prompting the visitor to confirm the visitor's intent;
> receiving a confirmed intent into the intent engine;
> processing the confirmed intent in the intent engine to determine at least one recommended webpage that matches the confirmed intent, the at least one recommended webpage selected from a plurality of webpages within a defined namespace;
> causing the webpage in the web browser to display at least one link to the at least one recommended webpage;
> prompting the visitor to rank the webpage for the inferred intent;
> receiving a rank from the web browser; and
> storing a datapoint comprising an identity of the webpage, the inferred intent and the received rank.

B.     *Alice* Step One

Facebook contends that claims of the '300 patent are directed to the abstract idea of "collecting, analyzing and using intent data" at a high level, and directed to the abstract idea of "providing recommended information to a visitor based on his or her current intent" on a more granular level. Dkt. 73 at 11. Facebook analogizes the asserted claims to claims in the *Electric Power* case, where the Federal Circuit found that claims directed to the abstract idea of "gathering and analyzing information of a specified content, then displaying the results" are patent ineligible. *Id*. at 10–11 (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Facebook alleges that the asserted claims "purport to address the age-old —and entirely *human* — problem of enabling the user to more easily locate 'information or perform the functions that

8

correspond to the visitor's intent.'" *Id*. at 11. And "[t]he ability to locate information corresponding to the person's intent is an age-old problem not limited to computers, and has been addressed in the paper-based world through libraries, filing systems, and other forms of categorization and organization." *Id*. at 12. Facebook constructs an example explaining how the concept behind claim 1 can be analogized to a librarian identifying books for a student in a school library. *Id*. at 8–9.

In response, USC analogizes the asserted claims to those in *DDR Holdings*, where the Federal Circuit found that a "claimed solution that is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" is patent eligible. Dkt. 83 at 8 (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. Dec. 5, 2014)). USC contends that the '300 patent "discusses a problem rooted in the advent of the internet and the prior art," because the "prior art lacked 'methods for determining a visitor's intent and for using the visitor's intent to predict and suggest webpages'" as disclosed in the '300 patent. *Id*. As such, USC contends, the '300 patent "described and claimed a unique, non-conventional solution to this internet-specific issue—a solution that reshapes how the internet is used, much like *DDR Holdings*." *Id*. USC further argues that the asserted claims do more than just "gathering and analyzing information of a specified content, then displaying the results" as in *Electric Power*, because claim 1 describes a "method for predicting an intent" by receiving "input parameters," analyze the input parameters to determine an inferred intent that best matches the predicted intentions of the visitor, prompt the visitor to confirm its intent, and then display a link within a webpage to another webpage that mostly closely matches the confirmed intent. *Id*. at 8–9.

The Court is not persuaded by USC's arguments. First, USC's analogy to *DDR Holdings* fails because the claims in *DDR Holdings* are directed to a technological solution to a problem

9

unique to the Internet, *i.e.*, instead of directing a user from a host website to a third-party website when the use clicks a hyperlink on the host website that points to the third-party website, the *DDR* invention provides a solution to have the user stay on the host website and present the user with a specially-constructed "hybrid" webpage merging elements from both the host website and the third-party website. Dkt. 95 at 2–3. Unlike the hyperlink problem addressed in *DDR Holdings*, which did not have a real-world, the problem the '300 patent attempts to address – finding information that matches the user's intent – is a longstanding problem that existed long before the advent of computers and is not unique to the Internet. The asserted claims do not solve an Internet-specific problem with an Internet-specific solution. Therefore, the '300 patent's claimed solution is not "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings,* 773 F.3d. at 1257.

Second, the asserted claims of the '300 patent are not "directed to an improvement to the functionality of the computer or network platform itself." *Customedia Techs., LLC v. Dish Network Corp.,* 951 F.3d 1359, 1365 (Fed. Cir. 2020). The asserted claims only recite high-level functional language without explaining how the claimed invention improve the functionality of the computer or the Internet. For example, the languages in claim 1 that USC points to recite functional result steps such as "processing the at least one input parameter … to determine at least one inferred intent," "processing the confirmed intent … to determine at least one recommended webpage that matches the confirmed intent," with no explanation of how "processing" steps are performed or how it causes the intent engine to determine an "inferred intent" or "at least one recommended webpage." The specification similarly offers little explanation of how these claimed functions are carried out and how they improve the performance of the network platform. *See, e.g.*, Figures 2 and 3 above and corresponding descriptions. Therefore, the '300 patent claims simply recite "mere

result[s]" without reciting specific steps that accomplish the results. *Cf. Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. Jan. 10, 2018) (finding asserted claims not directed to abstract ideas because "the claims recite more than a mere result. Instead, they recite specific steps . . . that accomplish the desired result").

For the above reasons, the Court finds that claims of the '300 patent, akin to those in *Electric Power*, are directed to the abstract idea of "collecting, analyzing and using intent data" under *Alice* step one. The Court therefore proceeds to *Alice* step two analysis.

### C.     *Alice* Step Two

In *Alice* step two analysis, courts examine whether the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367. When examining the issue of conventionality, courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements transform the nature of the claim into a patent eligible application." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019).

Instead of focusing on explaining whether the asserted claims contain an inventive concept, USC focuses on "the incredibly high standard that [Facebook] must meet to prevail on summary judgment on invalidity" — that is, "the movant's failure to wholly foreclose the existence of genuine disputes of material fact will preclude summary judgment." Dkt. 83 at 1–2 and 11–12 (citing *PPS Data, LLC v. Jack Henry & Assocs.*, 404 F. Supp. 3d 1021, 1037–39 (E.D. Tex. 2019)). USC contends that the specification of the '300 patent itself creates a genuine issue of material fact whether there is an inventive concept because the patent discusses, in the background section, that the solution to optimize delivery of information on websites required "improved systems and methods for determining a visitor's intent and for using the visitor's intent." Dkt. 83 at 11. Further,

11

USC points out that its technical expert, Dr. Golbeck, opines that the '300 patent claims a "unique and novel way of delivering webpages to consumers that was not previously demonstrated in the prior art." Dkt. 11–12. This, according to USC, establishes a genuine issue of material fact regarding whether the '300 patent claims "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Id*. at 12 (citing *Berkheimer*, 881 F.3d at 1367). As for the inventive step, USC cursorily states that generic computer systems do not perform the steps described in the asserted claims, including "analyz[ing] web users' activities in an attempt to infer the intent of a user visit," "us[ing] that information to then determine the webpages to present to the user based on the inference drawn," and "allow[ing] the user to confirm the inference to adjust the webpages being presented." *Id*.

The Court, however, does not find claims of the '300 patent recite any elements, when considered individually or "as an ordered combination," contain anything "significantly more" than the abstract idea itself. *See Alice*, 573 U.S. at 217–18. Here, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *See Elec. Power*, 830 F.3d at 1355. The asserted claims recite generic and well-known "web pages," "web browsers" and "databases" that were well known in the prior art long before the filing of the '300 patent in 2011. The "intent engine," which the Court construed as "a software component for collecting and analyzing intent data from visitors," does not provide the inventive concept, because it is a purely functional "black box" implemented using standard cloud platforms from well-known vendors like Google, Microsoft and Amazon. *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (claims failed step two where "[t]he specification fails to provide any technical details for the tangible components, but instead predominately

12

describes the system and methods in purely functional terms."); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 532-33 (Fed. Cir. 2020) (Claimed advance over prior art was a "functional abstraction" where the specification treated an element of the claimed invention as a "black box"). Likewise, the "intent tool", "ranking tool" or "widget" do not provide any inventive concept because it is a standard web browser functionality that "a person skilled in the art will recognize that multiple configurations are possible." The '300 patent at 6:19-7:13. In addition, the claims merely reflect a sequence performed in a logical order dictated by the abstract idea, and does not "transform the nature of the claim into a patent-eligible application" "as an ordered combination." *See Alice*, 573 U.S. at 217–18; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention."). Accordingly, the Court finds that the asserted claims do not include an "inventive concept."

Further, the Court does not find "the existence of genuine disputes of material fact [that] will preclude summary judgment" in this case. *See PPS Data*, 404 F. Supp. 3d at 1037. The specification's one-sentence statement of the patent's purpose to provide "improved systems and methods for determining a visitor's intent and for using the visitor's intent" does not create a genuine issue of material fact, because it is a statement of the abstract idea itself. Similarly, Dr. Golbeck's conclusory assertion that the claims present a "unique and novel way of delivering webpages to consumers that was not previously demonstrated in the prior art" does not create a genuine issue of material fact. First, Dr. Golbek's assertion is not backed by any concrete facts from the specification or the prior art. In addition, "a claim for a new abstract idea is still an abstract idea." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016); *Simio, LLC*

*v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020). While "[p]atent eligibility is a question of law that may involve underlying questions of fact, . . . not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021). The Court finds that this is one of the cases where there exists no "genuine disputes over the underlying facts material to the § 101 inquiry" and it is appropriate to grant the summary judgment of invalidity.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the asserted claims of the '300 patent are invalid under 35 U.S.C. § 101. Accordingly, the Court **GRANTS** Facebook's Motion for Summary Judgement of Invalidity (Dkt. 73).

SIGNED this 19th day of December, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE